REQUESTED BY: Dear Senator:
In your letter of January 10, 1978, you asked whether the State Board of Equalization and Assessment is following the statutes in the performance of its duties, and if not, what recourses are available to bring it into full compliance.
Ordinarily we would not be able to respond to such a question, since we can only give opinions to senators which pertain to their legislative duties, and enforcement of state statutes is not a legislative function. However, Legislative Resolution 156 was introduced on January 13, 1978, and adopted on January 17, 1978. This resolution creates a special Legislative Committee to study the present system of equalization, and, among other things, determine whether equalization laws are being complied with and whether officials are performing their duties under such laws. You are a member of this Committee. We will therefore attempt to answer your questions, as an aid to the investigative function of the Committee.
While your letter does not spell out exactly what function of the State Board you are inquiring about, we gather that what you are asking is whether the Board has complied with the law in its equalization function, which is imposed upon it by Article III, section 28 of the Constitution and by Chapter 77, article 5 of the Nebraska Statutes.
We can answer your question only in a strictly legal sense. In other words, we must look at the statutes to see what duties are imposed upon the Board, and determine whether they have followed procedures mandated therein. As to the actions the Board takes, in the exercise of its quasi-judicial function, those actions are dictated by the evidence adduced at the hearings held by the Board, and there is not way that we can evaluate that evidence and conclude that the Board did or did not act correctly.
On this basis, we cannot say that the Board has not complied with the law. Section 77-505, R.R.S 1943, requires the Board to meet for the purpose of equalizing real and personal property as soon as the abstracts of assessment have been received from the county assessors. The minutes of the Board show that the Board met for that purpose on July 19, 1977. The minutes show that following a lengthy discussion, the Board voted 3 to 2 to accept the abstracts of assessment submitted by the County Assessors for 1977. There is no basis upon which we could say that that action was unlawful, or even erroneous.
Certainly some members of the Legislature, private citizens, or taxpayers may feel that even approximate equalization has not been achieved, and that the Board should have taken some other action. This, however, is a question of evidence which could only be resolved by a court in a proper action (in this case, a direct appeal from the State Board of Equalization and Assessment to the Supreme Court), and which we cannot resolve by concluding that the Board's action was or was not proper.
Section 77-507, R.R.S. 1943, provides that the Board shall direct the Tax Commissioner to hold such hearings as are necessary to enable him to advise and assist the Board in its equalization function. We are informed that no such hearings were held before the 1977 meeting. Again, however, we are not in a position to say that any such hearings were `necessary' so we cannot say that the Board acted unlawfully in failing to instruct the Tax Commissioner to hold them.
As you probably know, in 1969 the Board attempted to equalize assessments by increasing the valuations of a number of counties. Twenty-eight of the counties appealed. With only minor exceptions, the actions of the Board were reversed, and the valuations in the abstracts of assessment restored. The Board had attempted that year to use a sales assessment ratio to support its actions, but the court held that an insufficient record had been made to sustain the Board's orders. See, cases against the State Board of Equalization and Assessment in 185 Neb. pp. 741 to 775.
In Carpenter v. State Board of Equalization andAssessment, 178 Neb. 611, 134 N.W.2d 272 (1965), the Board called in all 93 counties for the hearing. A sales assessment ratio study had been prepared. After hearing all the counties, the Board accepted the abstracts of assessment submitted by the counties. Terry Carpenter, as a taxpayer, appealed. The Supreme Court affirmed the action of the Board, saying:
 ". . . The original determination as to actual value under the statutory standard is the function of a county board of equalization. The determination of each individual county as to actual value within its county is clothed with a presumption of validity and, in the absence of evidence to the contrary, may be accepted by the Board as conforming to the law. . . ."
The court further observed that the primary function of the Board was to equalize valuations among counties, even if that required a departure from a statutorily required standard of true value, and said that the court would not pass upon the probative force of the evidence before the Board, but reviewed the record only to see if the Board had complied with the statutes in exercising its powers. It was only where the action of the Board was illegal, contrary to law, arbitrary and capricious that the court had authority to review the finding and order of the Board. The court then analyzed the sales assessment ratio relied upon by the appellants, and held that in that case the ratios were nothing more than the application of a statistical method to a mass of raw, unchecked and uncertain information, that they did not reflect the truth, and that they could not be used as a basis for any calculation as to disproportionate valuations between counties.
At the hearing last July the Board had before it the abstracts of assessment and a sales assessment study. No oral testimony was adduced. In the state of the record made at that hearing, there is no way, in view of the Carpenter
case, that the Supreme Court could have reversed the Board, had an appeal been taken from its action. Obviously, no legal action is now possible with respect to that action. Section 77-510, R.R.S. 1943, provides for appeal from any final decision of the Board by filing notice of appeal within ten days from the date of entry of the decision. No such appeal was taken, and the decision is not subject to collateral attack.
It is not for us to say whether or not the decision reached by the Board was the correct one. In order for it to have taken any affirmative action which could have been sustained in the court, it would, of course, have been necessary to have developed a very extensive record, which would have required months of work, study, and investigation before the formal hearing of the Board. If affirmative action is to be taken on the 1978 valuations, obviously such a record must be developed before the next equalization meeting of the Board. What should have been done, or what should be done in the future, are policy decisions for the Board, and we express no opinion about them.
All we are saying in this opinion is that, so far as we can see, there has been no violation of the law by the Board, and, in answer to your question about what recourses are available to bring it into compliance, certainly nothing can be done about the action taken in July of last year.
As to the future, an interested county or taxpayer could, theoretically, appear before the Board and present evidence that the assessments of the various counties were not equalized. If the Board failed to take corrective action, an appeal could be taken. As a practical matter, to make a record dealing, as it must, with all or a large portion of all of the counties of the state, would be a monumental task beyond the capabilities and resources of any taxpayer or county, since it would have to be so conclusive as to cause the Supreme Court to hold a refusal by the Board to accept it to be arbitrary and capricious.
If the Board refuses to order the Tax Commissioner to hold hearings as contemplated by section 77-507, or to take other preliminary actions contemplated by sections77-507.01, 77-508, 77-508.01 and 77-509, the only recourse the Legislature has, if it feels equalization has not and will not be achieved, is to make such actions by the Tax Commissioner mandatory, or to make provision for some other method of accumulating the necessary evidence. As the Supreme Court said in Carpenter v. State Board of Equalizationand Assessment, the county abstracts of assessment are presumed to be correct, and the court will not reverse a decision of the Board accepting such abstracts in the absence of a very convincing evidentiary record.